Good morning, Your Honors. Donald Green on behalf of Dr. William Alvear. He is the plaintiff and the defendant below. I'd like to reserve two minutes of my time for rebuttal, if I may. Thank you so much. Your Honor, the facts in the case are not really a lot in dispute, but they can be analyzed from a different perspective. The issue of entrapment, Your Honor, 40 years ago this court said that to establish entrapment as a matter of law, the defendant must point to undisputed facts, making it patently clear that an innocent person was induced to commit a crime. 30 years or 10 years later, 1995, in the United States v. McClellan case decided by this court, the government defeats that defense of entrapment by two things. That the defendant was predisposed to commit the crime before the government agents contacted him, and two, the government did not induce him to commit the crime. Your Honor, in this case in March of 2020, the government apparently got some kind of information and decided to set up a series of stings, not just one. One would have been the crime, but no, there was two more. So in March of 2020, there was a sting operation. The FBI set it up. They met with the two confidential sources, both females. They wired them for sound and or video. They provided them with... That's just the nature of controlled... Yes. That's a very common law enforcement technique. Yes, we... So what's your best argument from the facts of this case that there was entrapment? The best argument is that at every step, recall that the confidential source one had been a patient of Dr. Alviar's for some years and had brought along this other confidential source set up by the FBI. The best argument, Your Honor, is that as to the following points, one, the FBI set it up, and this was an ordinary sting. This was in an office in a medical center. So it wasn't like in the back of a convenience store. Second, although that we do see these wired for sound and these techniques used in many cases, this was done. They were provided with the money, and eventually there was eight pills ended up in the convictions for which the doctor was sentenced. But in this matter, Your Honor... Wasn't there evidence in the record that he was having communications with other people?  That came in rebuttal, Your Honor, in text messages, which the government obtained text messages. And we're talking about that, and one of the women even said, I'll make love to you when I come to your office. But I think that the... Was there a predisposition at that time to... Was it a office visit fee? Was it for drugs? The banter in the text messages to which you refer, excuse me, the basis for the position, excuse me, that the statement that the court has made, that weren't there other instances? The answer is yes, but there were no convictions of those. We have unknown parties, but again... It doesn't have to be convictions, right? We're just getting at is your client predisposed to engage in this kind of conduct, or is the government planting this whole idea in his mind? And the fact that he's got communications with people outside of these undercover operations suggests that this isn't an idea that the government planted in his mind. It's something that he thought about on his own. Yes, Your Honor. The facts can be seen in that light. But I believe that by looking at the totality of the circumstances, all of the elements of the defenses presented, they set it up, the wiring, the money, daytime visits in an office, in an office building. This was not something that was taken, excuse me, this wasn't something that happened in the backyard. And the thing is that the patients, these confidential source one and two, showed up at the office. It wasn't like they showed up after hours. I think it would have made a big difference. And when they were talking to Dr. Alvear, this arrangement came through, and I don't think he would have done it but for this action by the government. We don't have that before. If there are no other questions, I will sit down and submit it on our briefs. Thank you, Counselor. Thank you so much, Your Honors. Good morning. May it please the Court, Melanie Smith appearing for the United States. What I thought was interesting, as he said, but for the FBI getting involved, he would not have committed these crimes. But I think Judge Forster hit the point, no, but for the FBI getting involved, he would have not been caught for committing these crimes. The only issue before this Court is whether or not looking at all the evidence presented to the jury and all the inferences to be drawn from it, in a light most favorable to the government, was enough for any rational juror to determine he committed these crimes and he was not entrapped. Since most of the argument has been focused on entrapment, I will start there. The predisposition was shown at court. Yes, by the text messages that were recovered off of Dr. Alviar's phone when he was arrested showed that he had been communicating with other patients, agreeing to exchange pills for cash, for sexual favors. Well, even before this thing was set up, one of the confidential sources had been getting unauthorized medications from him, right? Was that evidence presented to the jury as well? It was, Your Honor. So informant one had been a previous patient. In 2016, she had been getting pills. In fact, Dr. Alviar sent her to rehab because he thought she had a problem from the pills that he was giving her since she kept coming back. And she reported that to the FBI once she became an informant for them. That's how this all started. They did not pick this doctor out of the phone book to target him. They had information that he was already doing this. And so as you noted, they set up a very typical operation. They sent in the two informants, and within maybe 10 minutes, he's writing a prescription. So in addition to the information from the informant, in addition to the text messages, the jury also heard he was coaching the informant through a cover story. When they came in, they said she had had a breast augmentation and was still in pain. When he starts writing her the prescription, he says, you're going to tell them it's back pain. What I'm writing here means back pain. You say, oh, I had an accident, I fell, something like that. He then sent her to a specific pharmacy where he said, they won't ask too many questions, they know me there. You don't know, a doctor doesn't know to coach a patient if he thinks what he's doing is right, if he hasn't done this before, and he doesn't have a pharmacy on standby that he knows isn't going to ask a lot of questions if this is something he hadn't been engaged in before. There was certainly predisposition presented to the jurors, and they found that he was predisposed, and it's a very high bar to overcome a jury's verdict in this case, and the jury was given the Ninth Circuit instruction on entrapment. They were given that instruction, and they did not find entrapment by the government. This idea that there was an inducement by the government, one, he's already predisposed, so we've overcome the entrapment, but two women, as patients, of course they're in his office. He is a doctor. That's what this law is addressing is doctors who are acting in an unauthorized manner, and they're there for a few minutes before he's writing this prescription that he specifically says, you know, the FBI is locking doctors up for doing what I'm about to do, and then he does it. So I don't, the entrapment defense, I just don't think it's there. I think Mr. Green even conceded to the text messages, which clearly shows predisposition that was put before the jury in this case. So we didn't get to the substance of the conviction, so I won't address that unless your honors have any questions about that. Any questions? I think we've got it. Thank you very much. And counsel, you have some time left. Do you want to do rebuttal, or are you submitting? One minute, if I may, your honor. Certainly. Thank you. Judge Wynn, you made an excellent point by noting that confidential source number one was a previous patient of Dr. Alvear, a head center. The government even acknowledges that. So by bringing her in, I believe that that was part of the bait because Dr. Alvear was comfortable with her, had known her as a patient for at least four or five years. His mindset was different. We submitted on that. If there are any questions. All right. Thank you very much, counsel, to both sides for your argument this morning. The matter is submitted.
judges: NGUYEN, FORREST, VANDYKE